McKinney, J.,
delivered the opinion of the Court.
*640 The plaintiff brought this action against the company to recover damages for an injury to his person, occasioned by a collision between two trains, on the defendant’s road. Under the instructions of the court, the jury found against the plaintiff.
It appears that about the 8th of December, 1857, a bridge on the road, and perhaps a hundred yards of the track, were swept off by a flood, so that the trains were hindered from passing between Nashville and Chattanooga for some days otherwise than by keeping a train on each side of the breach in the road, and changing the passengers and baggage from one train to the other.
On the morning of the 14th of December, before the breach had been repaired, the Superintendant of the road directed Chilcutt, an engineer in the employ of the company, to leave Nashville with his train at the hour of 5 o’clock A. M., the schedule time of departure being 2| o’clock, P. M. The Superintendant informed the engineer that he would find a train in readiness on the other side of the. breach in the road, and directed him to transfer his passengers and baggage to that train, and to go through to Chattanooga, stating that there would bo no train from the latter place to Nashville that day. The agent of the company at Chattanooga., in ignorance of the order of the Superintendant, started a train from the latter place on the same morning, and on a curve in the road, the trains came in collision, whereby the plaintiff received a serious injury.
The telegraph wires were broken, so that no communication could be made in that way. The respective conductors of the trains being entirely ignorant of the orders given at the opposite ends of the road, and neither having the least expectation of meeting a train, omitted the usual precautions to prevent a collision, when running out of time. The proof shows that the train from Chattanooga was running on schedule time, but the other train was not.
It appears that the plaintiff was an engineer in the employ of the company. His train was lying idle at Chatta *641 nooga, on account of the breach in the road ; and on the day preceding the collision, he got upon another train to go to Nashville, on a private errand of his own, without permission, as it would seem, from the proper agent of the company.
Chilcutt states that on his way to Chattanoooga, on the day of the collision, the plaintiff got upon his train at Decherd’s Station, a point between Nashville and the break in the road — and took his seat in the baggage car, the place where those who “ride free” should sit, and where he was sitting when the collision took place.
The proof shows that the Superintendent had the entire-management and control of the “ rolling stock” of the road ; that he always sent out and received the trains; and also had the control and management of the conductors, engineers, brakemen, and all other employees of the road, all of whom were bound to obey his orders, “ according to the rules-of the road.”
The court instructed the jury, in substance, that the Superintendent of the road and the plaintiff were both servants of.' the company; and that for an injury to the plaintiff, by- the-negligence or misconduct of the Superintendent, he could maintain no action against the company, if there were no fault or negligence on the part of the latter. That it made no difference that the one servant was higher in authority than the other, or that they belonged to different departments of the service. Nor did it make any difference that the plaintiff was not actually employed in the service of the company on the day the injury was received, unless he had abandoned the service of the company with the view of dissolving the relation of servant. The court further stated, in effect, that the Board of Directors of the company,.was to be regarded as the principal; and that an employee of the Board, though styled President or Superintendent, could not be so considered.
These instructions in reference to the facts of the case,, are incorrect, we think, in several particulars.
*642 The principle that the master is not liable for an injury received by one servant from the negligence of another, while both are acting in the common business of the same master — as applied to railway companies — is comparatively a new one everywhere, but especially in our courts. It is a principle of great practical importance, and care must be taken that it be not applied to cases not clearly falling within it. In some of its incidents it can scarcely be considered as yet fully settled. Whether the rule be applicable to servants in different -grades, or whore they are subordinate the one to the other, or not, in the same employment, are questions upon which there is some conflict of opinion in the American cases. In most of the cases, however, it seems to be thought that such a distinction is not maintainable ; and that it is sufficient that both servants were engaged in the same general business.
In the view we have taken of the present case it is, perhaps, not necessary that we should very minutely consider to what extent the application of the rule may be varied or modified by the different circumstances of particular cases. We must be careful, however, that such a latitude be not given to the rule as would enable the corporation to evade liability in all cases, by entrenching itself behind its officers and agents.
In the view of the Circuit Judge, the Superintendent of a railway company stands upon exactly the same footing, as respects the applicability of this rule, with any other employee, however subordinate his position ; and so of the President ; and that the board of directors only, in view of the rule, is to be regarded as the principal, or master. Upon this question we have been referred to no authority exactly in point.
If this be correct, it will inevitably follow, that the company cannot be held liable, in a case like the present, unless it can be shown that the injury resulted from the direct action of the company, in its corporate capacity. This is absurd. The corporation of necessity acts through the instrumentality of its officers and agents. If not prohibited by the charter. *643 it may delegate its authority to its officers and agents, so far as may be necessary to effect the purposes of its creation. It must act in this mode, or not act at all.
The Superintendent may be said to be, as respects this particular company, from the power shown to have been given him by the Board, the immediate representative of the company — the corporate executive officer — intrusted, for the time, with the power and authority of the board of directors, so far as regards the control and management of the trains, and all the arrangements connected therewith.
In this view, the company must be held liable for an injury resulting from the negligence, or improper order of the Superintendent, just as much as if it had emanated directly from an act of the company in its corporate capacity.
The matter of fact, that it was culpable negligence in the Superintendent to start a train from Nashville, out of time, without any precaution whatever to avoid a collision with a train coming in the opposite direction, is not denied.
But the instructions are erroneous in another respect. The principle stated above, does not apply “ where the servant injured was not, at the time of the injury, acting in the service of the master. In such case, the servant injured is substantially a stranger, and entitled to all the privileges he would have had, if he had not been a servant.” 6 Eng. R. cases, 580. Cited in 1 Am. R. cases, 568, in note.
The plaintiff, in the present case, may have been blamable for leaving his post of service, without permission from the proper source ; how that fact is, does not satisfactorily appear. But, admitting he was improperly absent without leave, still he was received on another train of the company without objection by the conductor — who was intrusted with the duty of excluding all persons not lawfully entitled to be on the train. And whatever may have been the exact relation of the plaintiff to the company, under these circumstances, it certainly cannot be said, in the sense of the rule, or in any proper sense, that he was then acting in the service of the company. The fact that his absence from duty, without per *644 mission, may have made him liable to an action, by the company, does not affect the question before us.
For the foregoing reasons, we think the rule is not applicable to this case.
The fact that the plaintiff was riding in the baggage car does not affect the case : though, from the proof, that was the proper place for him to be, under the circumstances.
It is laid down in Redfield- on E. 381-2, that “ one being in the baggage car, with the knowledge of the conductor, will not preclude Mm from a recovery for an injury caused by a collision, even though he might, or would not have been injured if he had remained in the passenger car.” 14 Howard, (U. S.) 468.
Nor does it affect the question, that the plaintiff, at the time of the injury, was “ riding free.” The same author lays it down, that “ the liabilities of the company attach, although the passenger were riding upon a free ticket. ” Redfield on R., 328, and note. See also, 14 Howard (U. S.) R., 468.
Upon the whole case, we think’the judgment is erroneous! and it will be reversed.